UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

UNITED STATES OF AMERICA,

   -v-                                                                      21-cr-097-LTS-1

JEFFERSON SANCHEZ,

        Defendant.

--------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER

The Court has received Defendant Jefferson Sanchez's motion for a reduction in sentence under 18 U.S.C. section 3582(c)(1)(A) (docket entry no. 37 ("the Motion")), as well as the Government's opposition (docket entry no. 39 ("Gov. Opp.")), and Mr. Sanchez's reply (docket entry no. 44 ("Def. Reply")). The Court has considered carefully the parties' submissions and arguments and, for the following reasons, the Motion is granted in part, and Mr. Sanchez's sentence is reduced by three months.

## BACKGROUND

In March 2019, Mr. Sanchez pled guilty to charges of conspiracy to steal public funds and filing false tax returns in a case before Judge Kaplan. (See 18-CR-781-LAK, docket entry nos. 42 and 50.) Mr. Sanchez and his co-conspirators had been running a fraudulent tax preparation business, in which they prepared and filed income tax returns using false information, thereby helping customers receive large, undeserved, tax refunds by listing false dependents. In June 2019, Judge Kaplan sentenced Mr. Sanchez principally to 24 months imprisonment followed by three years of supervised release, and he was ordered to pay the IRS $271,713 in restitution.

Mr. Sanchez's surrender date was originally set for August 6, 2019, but Judge Kaplan awarded him several extensions of the date (moving it to November 2019, to December 2019, and finally to January 2020), owing to extenuating family and medical circumstances. He first was granted an extension to allow him to undergo knee surgery, and later to allow him to travel to the Dominican Republic to help care for his young son, who was very ill with Dengue fever. (See 18-CR-781-LAK, docket entry nos. 57, 60, 62, and 65.) Mr. Sanchez's final surrender date was set for January 9, 2020, but he did not surrender on that date or anytime thereafter. Mr. Sanchez was in a serious car accident on January 12, 2020, which left him hospitalized with significant injuries. (Id., docket entry no. 67.) Over a year later, on January 29, 2021, Mr. Sanchez was found and arrested in the Dominican Republic. He was brought back to the United States and presented in this District on February 3, 2021, and has been in custody since that time.

On February 16, 2021, Mr. Sanchez pled guilty before this Court to one count of bail jumping (in violation of 18 U.S.C. section 3146) for his failure to timely surrender for Judge Kaplan's sentence. (Docket entry nos. 6 and 11.) On April 22, 2021, this Court sentenced Mr. Sanchez principally to five months of imprisonment for bail jumping (to run consecutively to the sentence previously imposed by Judge Kaplan), as well as three years of supervised release (to run concurrently with the supervised release term previously imposed by Judge Kaplan). (Docket entry no. 20.) Mr. Sanchez is currently imprisoned at Fort Dix Federal Correctional Institution ("Fort Dix"), and has a projected release date of February 17, 2023. (Gov. Opp. at 4.) At present, Mr. Sanchez is still serving Judge Kaplan's 24-month tax fraud sentence and is set to

begin serving this Court's 5-month bail jumping sentence in approximately October 2022.  Mr. Sanchez now requests that the Court reduce all or part of his 5-month sentence.[1]

## DISCUSSION

Mr. Sanchez moves for a reduction in his sentence pursuant to 18 U.S.C. section 3582(c)(1)(A) which provides, in relevant part, that:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 117-159).  The Court therefore considers (1) whether the defendant has exhausted his administrative remedies;[2] (2) "the factors set forth in section 3553(a) to the extent that they are applicable," and (3) in light of those factors, whether the defendant's proffered "extraordinary and compelling reasons" for a sentence reduction warrant such a reduction.  The sentencing factors set forth in 18 U.S.C. section 3553(a) are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—

---

[1] Mr. Sanchez also moved for compassionate release in Judge Kaplan's case.  Judge Kaplan denied the motion on June 29, 2022.  (See 18-CR-781-LAK, docket entry no. 80.)

[2] Mr. Sanchez originally moved for compassionate release in the above-captioned case in a motion dated January 25, 2022 (docket entry no. 33); the Court denied that motion for failure to exhaust administrative remedies.  (Docket entry no. 34.)  In connection with the instant Motion, Mr. Sanchez has demonstrated that he presented his compassionate release request to the warden of his facility on February 22, 2022, and did not receive a response, thus satisfying the exhaustion requirement.  (Mtn. at 4.)  The Government agrees that "exhaustion is not an obstacle in this case." (Gov. Opp. at 5.)

>(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range . . . established [by the Sentencing Guidelines] …; (5) any pertinent policy statement [issued by the Sentencing Commission in effect on the date the defendant is sentenced] …; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C.A. § 3553(a) (Westlaw through P.L. 117-159).

The Court may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release," and "the district court's discretion in this area—as in all sentencing matters—is broad." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit" on this discretion is that "rehabilitation alone shall not be considered an extraordinary and compelling reason." Id. at 237-38 (quoting 28 U.S.C. § 994(t)). "The defendant has the burden to show he is entitled to a sentence reduction" under section 3582(c)(1)(A). United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

At the time of Mr. Sanchez's sentencing in April 2021, the Court considered the full range of section 3553(a) factors and all of the facts put before it in formulating the sentence. The Court discussed the seriousness of the offense conduct of bail jumping, observing that, although Mr. Sanchez had extenuating circumstances affecting his surrender date (such as his injury in the car accident and his son's medical problems), even after his recovery Mr. Sanchez "did not contact the Court, he did not make any effort to surrender," and he "simply ignored the January 2020 surrender deadline" for over a year.  (Docket entry no. 26 ("Sent. Tr.") at 19-20.)

Regarding Mr. Sanchez's personal history and characteristics, the Court recognized Mr. Sanchez's "care obligations and a strong desire to help care for his son," who required physical therapy and speech therapy following his recovery from Dengue fever. (Id. at 20.) The Court also noted that Mr. Sanchez was "serving under onerous conditions of confinement" due to the pandemic, and that he "will have served a significant amount of time in prison" under Judge Kaplan's sentence. (Id. at 21-22.) As for the punitive and deterrence goals of sentencing, the Court addressed the "breach of trust" that this offense constituted, and the need to "incentivize Mr. Sanchez and others like him . . . to act in a manner that is consistent with the trust afforded to defendants whom the Court allows to surrender voluntarily." (Id. at 21.) Taking all of these factors into account, the Court sentenced Mr. Sanchez to five months imprisonment (which was below the Guidelines range of 8 to 14 months), followed by three years of supervised release.

In the approximately 15 months that have elapsed since the sentencing, there has been one particularly significant change in circumstances. Specifically, Mr. Sanchez reports that his young son has been left without a stable caregiver. After Mr. Sanchez was arrested for bail jumping in January 2021, his son was staying with Mr. Sanchez's partner in the Dominican Republic, but that relationship soon ended, and the partner left the country. The son then went to stay with Mr. Sanchez's uncle for a time, but the uncle died of a pulmonary infection. Mr. Sanchez reports that his son is now staying with the uncle's neighbor, in a temporary arrangement that has become untenable.

Mr. Sanchez argues in his Motion that these changed family circumstances constitute extraordinary and compelling reasons for a reduction in his sentence. Mr. Sanchez also proffers as reasons for his release the poor conditions at Fort Dix (such as overcrowding, poor sanitation practices, and the mixing of vaccinated and unvaccinated populations), and his

health conditions (such as asthma, high cholesterol, obesity, and gout), which place him at a higher risk from complications should he be infected with COVID-19. The Government opposes any reduction in sentence, focusing on the seriousness of Mr. Sanchez's offenses (of both tax fraud and bail jumping); noting that Mr. Sanchez is fully vaccinated, which greatly reduces his risk of serious complications should he be infected with COVID-19; asserting that his medical records show Mr. Sanchez is receiving attentive care for all of his health conditions; and asserting that his family circumstances, while unfortunate, do not rise to the level of extraordinary and compelling.

After taking into account all of these considerations, the Court concludes that Mr. Sanchez's obligations toward his son and the new lack of reliable family care for his son establish compelling circumstances warranting a partial reduction in sentence. Mr. Sanchez's son has experienced two major disruptions in caregivers while Mr. Sanchez has been in custody. First, Mr. Sanchez's partner left the country, leaving the son in the care of Mr. Sanchez's uncle, and then the uncle died, leaving the son in the care of a neighbor, in an unstable situation. Mr. Sanchez reports that the neighbor lacks financial resources and "struggles on a daily basis for food and electricity," and his son has become a "burden" due to his special needs. (Def. Reply at 3, 8.) The Court concludes that the lack of a permanent and reliable caregiver for his son is an extraordinary circumstance supporting a reduction in Mr. Sanchez's sentence. See, e.g., United States v. Francisco-Ovalle, No. 18-CR-526-AJN, 2022 WL 1094730, at *2 (S.D.N.Y. Apr. 12, 2022) (granting compassionate release due to lack of permanent caregiver for the defendant's children, where "the Defendant's wife died" and "[s]ince that time . . . a network of friends and extended family members have been taking care of the Defendant's children," in a "patchwork arrangement" that was "temporary at best").

Certain aspects of Mr. Sanchez's conduct while in custody also support a sentence reduction to permit him to return more quickly to caring for his son. Mr. Sanchez has had no disciplinary issues while in custody, has participated in numerous educational programs, and has shown a genuine desire to change his life for the better.[3] See United States v. Fisher, 493 F. Supp. 3d 231, 238 (S.D.N.Y. 2020) (noting that the defendant's "clean disciplinary record" and "the education he obtained in prison" showed "considerable and sustained efforts to rehabilitate himself" and weighed in favor of compassionate release). Mr. Sanchez has also put forth a concrete re-entry plan for his reintegration into society. See United States v. Salvagno, 456 F. Supp. 3d 420, 461 (N.D.N.Y. 2020) (granting compassionate release where defendant "presented a re-entry plan that was especially promising, as it provided concrete assurances that he would make a transformation to a law-abiding life"). He reports that he has received permission from the BOP to serve the final three months of his sentence in a halfway house (Mtn. at 2), which will aid him in making a smooth transition out of custody. Mr. Sanchez states that he has a job lined up as a hotel receptionist in New York City, that he intends to move in with his elderly parents at their apartment in Queens to help care for them, and that he intends to bring his son back to the United States to live together with himself and his parents.

Moreover, by the time this Court's sentence will begin, Mr. Sanchez will have already served approximately two years under Judge Kaplan's sentence in the unusually harsh conditions imposed by the pandemic. See United States v. Rodriguez, 492 F. Supp. 3d 306, 311

---

[3] The Court has also received a letter of support (docket entry no. 43) from Mr. Sanchez's friend, Julissa Perez, who is acquainted with Mr. Sanchez through their time spent volunteering together at a nonprofit in the Bronx that assists cancer patients. He became involved in the nonprofit after his mother was diagnosed with breast cancer. Ms. Perez describes him as a "dependable, honest, and compassionate" person who has greatly contributed to the nonprofit and to the community via his volunteering efforts. (Id.)

(S.D.N.Y. 2020) (noting that pandemic conditions such as health risks, lockdowns, and restrictions on services have made "incarceration harsher and more punitive than would otherwise have been the case," thus weighing "in favor of a finding of extraordinary and compelling reasons"). Mr. Sanchez will also be serving a significant 3-year term of supervised release upon the termination of his custodial sentence, which will help ensure that the Court's sentencing goals are met and that Mr. Sanchez can continue to effectively rehabilitate himself while refraining from reoffending. See United States v. Hansen, No. 07-CR-00520-KAM, 2020 WL 1703672, at *10 (E.D.N.Y. Apr. 8, 2020) (granting compassionate release where "[t]he sentence Mr. Hansen has served, combined with the period of supervised release that will follow, appropriately reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense") (quotation omitted).

Accordingly, under the unique circumstances of this case, the Court concludes that the lengthy period of time that Mr. Sanchez will have served in pandemic conditions; the unforeseen family circumstances surrounding the lack of a caretaker for his son; his clear remorse and desire to better himself; and his concrete reentry plan together amount to extraordinary and compelling reasons warranting a reduction in sentence. The complete elimination of the bail jumping sentence would, however, be inconsistent with the statutory purposes of sentencing, given the seriousness of the crime and Mr. Sanchez's abuse of the trust that the Court placed in him when extending his surrender date multiple times. The Court concludes that a three-month reduction of Mr. Sanchez's custodial term (reducing his sentence from five months to two months) will result in a sentence that provides Mr. Sanchez time to prepare for his transition back into the community, allows him to begin making plans for the care

of his son, and is sufficient but not greater than necessary to effectuate the Court's sentencing goals.

## CONCLUSION

For the reasons set forth above, Mr. Sanchez's motion for compassionate release pursuant to 18 U.S.C. section 3582(c)(1)(A) is granted to the extent that the Court reduces the custodial portion of Mr. Sanchez's sentence by three months (from five months to two months). A form Order on Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) will also be entered. Chambers will mail a copy of this Order to Mr. Sanchez. Docket entry no. 37 is resolved.

SO ORDERED.

Dated: New York, New York
July 26, 2022

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

**Copy to be Mailed to:**

Jefferson Sanchez, register no. 85558-054
FCI Fort Dix, Federal Correctional Institution
P.O. Box 2000
Joint Base MDL, NJ  08640